English v. English.

JOHN ENGLISH, appellant,

v.

ABBY L. ENGLISH, respondent.

On account of her husband's abuse of marital rights, a wife left him, in November, 1875, taking with her their two children. Her petition for a divorce, on this ground, was denied, upon his promise of conjugal kindness thereafter. The wife, however, refused to return to his home, with her children, notwithstanding his overtures and entreaties.—*Held*, that the wife's acts were not "misconduct," within the meaning of the statute, sufficient to take away from her the possession of the children, the boy being now about eleven and the girl nine years of age; the mother being capable and willing to support and educate them, and the children preferring to remain with her.

On appeal from a decree of the chancellor, reported in *English* v. *English, 4 Stew. Eq. 543.*

NOTE.—In addition to the authorities cited in the opinions and briefs in this case, and, also, in *2 Bish. Mar. & Div. §§ 529, 542, 546–549; Schouler's Dom. Rel. 335; Tyler on Infancy 273; 2 White & Tudor's Lead. Cas. in Eq. 1506; Hurd on Habeas Corpus 450; English v. English, 4 Stew. Eq. 544, note,* the following analogous cases may be referred to: *Taylor v. Taylor, 4 Jur. 959; Fynn's Case, 2 DeG. & Sm. 457; In re Agar-Ellis, L. R. (10 Ch. Div.) 49; In re Besant, L. R. (11 Ch. Div.) 508, (12 Ch. Div.) 605; Corsellis v. Corsellis, 1 Dr. & War. 235; Striplin v. Ware,*

English v. English.

*Mr. R. Gilchrist* and *Mr. B. Williamson*, for appellant, cited—

*Rev. Divorce* § 27; English v. English, 12 C. E. Gr. 585; Bishop on Marr. & Div. § 799; 20 Alb. L. J. 158, Latham v. Latham, 30 Gratt.; 11 Johns. 281.

*Mr. I. W. Scudder*, for respondent, cited—

English v. English, 12 C. E. Gr. 71; Matter of Dowles, 8 Johns. 329; Matter of Waldron, 13 Johns. 418; People v. Porter, alias Cooper, 1 Duer 709; Hurd on Habeas Corpus, ch. 9, § 6, pp. 474 to 521; 20, 21 Vic. ch. 85 § 35; In re Goldsworthy, L. R. (2 Q. B. Div.) 75; 36, 37 Vic. 66; D'Alton v. D'Alton, L. R. (4 P. & D.) 87; Godrich v. Godrich, L. R. (3 P. & D.) 135; Wilkinson v. Denning, 80 Ill. 342; Hewitt v. Long, 76 Ill. 408; Hurd on Habeas Corpus 451, 453.

*Mr. Jacob Weart*, for respondent, cited—

Hayne v. Baldwin, 1 Hal. Ch. 454; State v. Clover, 1 Harr. 419; Com. v. Hammond, 10 Pick. 274; State v. Stigall, 2 Zab. 286; Com. v. Hamilton, 6 Mass. 273; People v. Pellow, 1 Sandf. 672; Ex parte Hansen, Edm. Sel. Cas. 9; Ex parte Wollstoncroft, 4 Johns. Ch. 80; People v. Chegaray, 18 Wend. 637; People v. Cooper, 1 Duer 709; Wilkinson v. Denning,

36 Ala. 88; Burge v. Burge, 88 Ill. 164; Conn v. Conn, 57 Ind. 323; Ryce v. Ryce, 52 Ind. 64; Powell v. Powell, 53 Ind. 513; Zuver v. Zuver, 36 Iowa 190; Pratt v. Nitz, 48 Iowa 33; Green v. Green, 9 Reporter 176; Brandon v. Brandon, 14 Kan. 342; Adams v. Adams, 1 Duv. 167; Harvey v. Lane, 66 Me. 536; Harding v. Harding, 22 Md. 337; Hill v. Hill, 49 Md. 450; Corrie v. Corrie (Mich.), 9 Reporter 445; Fitler v. Fitler, 33 Pa. St. 50; Hoffman v. Hoffman, 15 Ohio St. 427; Clark v. Bayer, 32 Ohio St. 299; Buckminster v. Buckminster, 38 Vt. 248; McGoon v. Irvin, 1 Pinney 526.

No court can compel discordant husbands and wives to live together. Baugh v. Baugh, 37 Mich. 59; Simpson v. Simpson, 25 Ark. 487, 490.

In *Taylor's Case*, 11 Sim. 178, the parties were married in 1829, and, in 1837, the wife left her husband, alleging in justification a charge of adultery, which was wholly without foundation, as she herself afterwards admitted. Overtures were made by the husband, but the wife, acting on some friends' advice, refused to return home. The husband, believing her affections to be alienated beyond reconciliation, went

English *v.* English.

*80 Ill. 342; Campbell* v. *Campbell, 37 Wis. 208; Hewitt* v. *Long, 76 Ill. 399; Wilson* v. *Wilson, 45 Cal. 400; State, Baird* v. *Baird, 3 C. E. Gr. 194; Com.* v. *Dougherty, 1 Pa. Leg. Gaz. 163 ; Symington* v. *Symington, L. R. (2 H. L. Sc.) 415; D'Alton* v. *D'Alton, L. R. (4 P. & D.) 87; 2 Bish. on Marr. & Div.* §§ *541, 542; Rev. 485* § *21; Rev. 319* §§ *26, 27.*

The opinion of the court was delivered by

KNAPP, J.

The appeal is from the chancellor's decree disposing of the custody of two infant children of the parties—Richard W. English, aged about eleven years, and Phebe E. English, aged about nine years.    The litigants are husband and wife, and, since November, 1875, have lived separate.    The wife, on removing from the domicile of her husband, took with her, to her father's house, both children, and has since resided there, retaining their possession.    The appellant, in January, 1879, filed his petition with the chancellor, setting forth the wife's removal from his home without just cause; the taking and detention of the children without his consent and against his will; and prayed allowance of a *habeas corpus* to bring them into court, and the award of their custody to him.    It is not alleged that the children are there

abroad with his five children, two over and three under seven years of age.    Afterwards the wife, in 1838 and 1839, made overtures to her husband, and, also, an unqualified retraction of her former charges, which, however, failed to satisfy him.    In 1838, she filed a petition for a restoration of conjugal rights, and, pending an appeal by the husband from a decree in her favor, she petitioned for the delivery to her of the children under seven years old.—*Held,* that she was not entitled to their custody.

In *Brooks* v. *Brooks, 35 Barb. 85,* the parties were married in November, 1856, and their child born in September, 1857.    In May, 1858, the wife left her husband's house, in consequence of his ill-treatment, and obtained possession of the child by *habeas corpus.*    On the husband's petition for the child, alleging that his wife had left him without just cause or provocation, and absented herself and detained the child against his wishes,—*Held,* that the overruling of the husband's offer to prove his allegations in the petition, and that he was of good moral character and competent to take care of his wife and child, and had frequently offered to do so, was erroneous.

English *v.* English.

against their will; that they are not properly cared for; or that the-mother is an unsuitable person to be entrusted with their care, except in respect to her dereliction in duty to her husband and home.

The respondent, by her return, admitted their custody, and produced them before the court. She alleges, in justification of her removal, abuse, by the husband, of marital rights, and fear of its repetition, if she returned to him, as her reason for continued separation. She charges him with attempts to regain possession of the children by fraud and force; and that, not through regard for them, but for the purpose of distressing her with fears for their safety, and thereby to coerce her to return to his abode. She alleges that the children are properly cared and provided for by her; that it is their desire and for their welfare to remain with her, and she prays that to her their continued custody may be decreed.

The appellant's answer to the return denies any effort by deception, force or violence to regain possession of the children. He avers that the acts with which he is charged with respect to them, are greatly exaggerated, their true character being mere indiscretions in conduct arising out of uncontrolled affection for his children; or, that they were

In *People* v. *Humphreys, 24 Barb. 521,* the marriage took place in January, 1853, a female child was born in October, 1855, and the wife, without the husband's consent, left him in April, 1856. He retained the child. In April, 1856, she petitioned for the child, and it was delivered to her. On appeal, it appeared that although the husband had been inattentive, and often used coarse and vituperative language to her, and to others concerning her, yet his conduct did not justify her separation, and the child was restored to him.

In *Holmes's Case, 19 How. Pr. 329,* the parties were married in 1841, and had three daughters. The husband, in August, 1859, left his wife without any provision and removed to Illinois with all the children, the only grounds of his desertion being that she was irritable and jealous and a spiritualist; the latter charge, however, she denied and substantiated her denial. She alleged and proved that he was a spiritualist with a tendency to free love, and traveled and held public exhibitions with a female medium of similar proclivities. The wife, on *habeas corpus* in Illinois, obtained the youngest child. The husband afterwards made overtures to his wife and offered to provide her a home, if she would return, but she refused, not believing in the sin-

English v. English.

the result of accident. The answer admits that the children
are so young that they require the attentions of the mother,
yet he insists that they can be better cared for at his home
than where they are.

The chancellor, upon the pleadings and proofs, decreed
that the mother retain the custody of both children, and
from that decree this appeal is taken.

The jurisdiction of the court of chancery to settle and
dispose of the care and custody of infants, through a pro-
cedure like this, is established. The parties, in their litiga-
tion, have, by their pleadings and proofs, presented issues
within the cognizance of that court, under its general juris-
diction as public guardian of the rights and interests of
infants. Such jurisdiction is not, by the use of the writs of
*habeas corpus* to bring the infants into court, cut down and
restricted to those limits which outline and bound a strict
proceeding on *habeas corpus*. The writ serves a purpose
merely ancillary to the more general design of the suit, to
secure a definite disposition of them, as wards of the court.
*Baird* v. *Baird, 4 C. E. Gr. 482.*

In considering the grounds which should have weight in
deciding controversies of this character, while the rights of
parents will not be disregarded or their interests overlooked,

cerity of his professions and promises. The eldest child, about seven-
teen years old, was living with her mother from choice, and, also, the
youngest, about eight, and the second one, about fourteen, with her
father. His petition to have the eldest and youngest children given
to him, was denied.

In *Price* v. *Price, 55 N. Y. 656*, an order awarding the custody of a
child, twelve years old, to its mother on a divorce obtained by her,
was considered so far "discretionary" that it was not appealable.

In *Anonymous, 55 Ala. 428*, a wife sought a divorce from her husband,
on the ground of cruelty, and, also, sought the custody of her daugh-
ter, four or five years old, the only issue of the marriage. The divorce
was refused, but the child awarded to her.

In *McKim* v. *McKim, 12 R. I. 462, 10 Cent. L. J. 389, 21 Alb. L. J.
343*, the marriage was celebrated in October, 1874, and the parties
lived in New York until May 1875, when they removed to Newport,
where their daughter was born in August, 1875. They returned to
New York, in January, 1876, and lived there until May, 1877, when
the wife, with their child, left him, and afterwards resided with her
father in Newport. No legal justification for her desertion was

English v. English.

the court will not be controlled in its decision by the strict rights of either party, but will determine the question of custody mainly upon considerations of advantage to the infant; the cardinal rule of action governing the court being regard to the benefits of the minor, holding its welfare superior to the claims of either parent. *Schouler's Dom. Rel. 339; Baird v. Baird, 6 C. E. Gr. 384.*

This is a rule in courts of equity, and was declared and applied in this court, in the case last cited, before the passage of the supplement of 1871 to the act concerning divorces. In this respect, that act introduces no new rule; but it embodies a clear declaration of the legislative approval of that which the court had adopted. Under it, in controversies between parents for the custody of their children, there can exist no restraint upon the mind of the court, arising out of the superior rights of the father at common law, but all legitimate force must be accorded to those considerations which touch the well-being of the child.

The right of either party to appeal from the determination of the chancellor, is also established. *Baird v. Baird, 4 C. E. Gr. 481.* The cause is before us in proper form, and, however delicate or unwelcome the task may be, it must be decided. From every point of view, the cause has

proved.—*Held,* that the welfare of the child, a delicate female four years old, required that she should remain with her mother. The court cautioned the mother, however, against any attempt to alienate the child's affection for its father.

In *McShan* v. *McShan, 56 Miss. 413,* the parties married in 1871, in Mississippi; soon afterwards they removed to Arkansas, and, when one child, a daughter, was about two and a half years old and his wife *enceinte* of another, the husband deserted his family, taking with him all the money his wife possessed. She returned to her father's house in Mississippi, and several months after the second child, another daughter, was born, he also returned, and, becoming prosperous in his profession, then made overtures to his wife to return to his house, which she rejected. It was shown that he was a reputable physician, with good professional prospects and of moral habits.—*Held,* that his petition, on *habeas corpus,* for his two children must be refused.

In *Lusk* v. *Lusk, 28 Mo. 91,* the parties were married in 1847; in 1850 the husband went to California, intending to return in two years, leaving his wife and two children in Missouri; he remained absent until 1857, and his wife, learning, from a letter received in 1854, that he was

given to every member of this court an unusual degree of anxiety and concern in its decision. It has its source in, and is the present product of, conjugal difficulties and discords existing between these parties. These dissensions, through want of mutual forbearance and the exercise of a spirit of forgiveness, are prolonged to a degree that promises permanent desolation to a home that was once, and might still be, a happy one; and that bids fair to entail a heritage of humiliation and shame upon these children, whose happiness and welfare both parents claim to be striving for.

In this wrong condition of things, the court is called upon to decide upon the rival claims of these parents to the custody of their common offspring. Much of the argument addressed to the court, was directed to a discussion of the fitness of the respective parties for the exercise of this trust. The facts spread before us for our guidance were drawn, in a large measure, from testimony taken in other litigations between the parties, much of it exposing to view the *penetralia* of their connubial life. From each side was urged the unfitness of the other, by reason of the conduct of each toward the other from the beginning of their domestic discord.

---

dead, married again in 1855; on the husband's return, she ceased cohabiting with her second husband. On her petition for a divorce from her first husband, on the ground of desertion, and his cross-bill for divorce on account of her alleged adultery with her second husband, the court granted *him* a divorce, and gave him the custody of the children. On appeal,—*Held,* that, although the divorce was good, yet the children must be restored to their mother.

In *Messenger* v. *Messenger, 56 Mo. 329,* on cross-petitions, on the ground of desertion, a divorce was granted to the husband, but the two children, apparently about eight and six years old, were ordered to be left with the mother.

In *Hewitt's Case, 11 Rich. 326,* the wife, without justification, abandoned her husband, leaving with him their son, about seven months old. On her petition to obtain his delivery to her,—*Held,* that, although her own character was excellent, yet, as she had established none of her charges of unfitness against her husband, he must retain the child.

In *Com.* v. *Demott, 64 Pa. St. 305, note,* a wife, shown to be high-tempered and violent when aggravated by her husband, deserted him,

English *v.* English.

It is quite evident that, if the present disposal of these children were made to depend upon our determination as to which of these parties is most at fault in their general controversy, it might be difficult to decide. Neither can be said to be entirely free from fault with respect to the other. The separation of the wife from her husband, and carrying with her his children, prolonged as such separation has been, stands adjudicated as being without sufficient legal justification. She still continues apart, and withdraws her children to another household, where, indeed, their material wants may be cared for and supplied, but where they, in their young years, are likely to lose their affection for their father, if not to learn to look upon him with dislike or even dread. She has made no tender of advances toward accommodation, nor manifested, so far as appears, any willingness to meet the offers and overtures of her husband for reconciliation, when, perhaps, a kindly word from her might restore unity and happiness to this now deserted home. She exposes herself to the inevitable certainty of hearing dispraise of her husband and the father of her children, when, for her and their real interests, his honor and good name should still be as dear to her as her own.

On the other hand, the first fault that caused this wife to

taking with her their daughter, five years and three months old.—*Held*, that she was not so incapable of taking care of the child that it must be delivered to its father.

In *Carr* v. *Carr, 22 Gratt. 168*, a divorce was granted to a husband for his wife's desertion, although she had been driven thereto by his conduct, which was rude, petulant and penurious.—*Held*, that their child, although a female, and only three years old, must be restored to the father.

In *Welch* v. *Welch, 33 Wis. 534*, a wife obtained a divorce in 1861 for her husband's desertion, and also the custody of their son, about a year old. Both parents afterwards married again. In 1872 the father obtained an order transferring the boy, then fourteen years old, to him, upon his establishing to the satisfaction of the court his ability and desire to provide maintenance and education suitable to the boy's condition and prospects in life.

In *Foster* v. *Redfield, 50 Vt. 285*, on the ground that a petition for divorce involves not only the interests of the immediate parties thereto, but also those of their children and of the public, a court, after hearing a petition brought by the mother of two young children

English v. English.

leave her husband, was his; and this court, in refusing to support a decree of separation, did so, not upon the ground that the causes of complaint against him were untrue, or not of such a character as to plead loudly in excuse of the wife's withdrawal from his home and society, but because they had faith in his expressions of regret for the past, and believed, on the strength of his promises, that she could, with entire security, return to companionship with him. It was not imagined for a moment that the affection for his wife and children, which he so strongly avowed, could ever permit him to resort to either violence or unfair stratagem, to restore the family unity. His desire for their return to him, unfeigned as I believe it was, resulted in acts on his part bearing a hostile appearance, and which were far more likely to create distrust and alarm in the minds of both wife and children, than to awaken dormant affection or inspire confidence in the sincerity of his promises and professions. His is the stronger nature, and, however ready others might be, in view of his trying situation, to look with forbearance on his attempts to possess himself of his children by force, it was most natural for his wife to regard them (as in her return to the writ she seems to do), not as the outgrowth of affection for his children, but as the assertion of a mastery, and designed to coerce her to his wishes. It was unwise to forget that the authority which a husband, as head of the household, is permitted to wield, has, in the consideration

for a divorce, founded on her husband's intolerable cruelty and refusal to support her, declined to grant the divorce, and, of its own motion, continued the case, with a view to a reconciliation of the parents, and the probable better support and education of the children, and a higher court refused to interfere by *procedendo.* See *Baugh* v. *Baugh,* *37 Mich.* *59.*

In *Chandler* v. *Chandler,* *24 Mich.* *176,* a decree of divorce, granted in August, 1868, on account of the husband's extreme cruelty, awarded the child (a boy) then about two and a half years old, to its mother. In January, 1871, the father's petition for the custody of the boy, no change appearing in the circumstances existing when the former decree was made, was denied.

In *Scoggins* v. *Scoggins, 80 N. C. 318,* on a wife's petition alleging cruelty, and that her husband was trying to dispose of his property,

English *v.* English.

of human and divine law, its better title in the confidence
and affection which repose it in his hands, and that when it is
asserted by force, the right is exposed to question.  He
wields, as such head, a scepter of peace, and not of passion
and conflict; swayed in mildness, it is far less likely to
break in his grasp than when brandished in power and
strife.

The faults thus attributed to these litigants, and urged
upon the court by the opposite sides, as elements to be con-
sidered in reaching a decision, unfortunate as they are in
their results upon their own lives and prospects of future
happiness, are not of a nature to affect the moral fitness of
either of these parents to have the control of the children.
The character of the father, in his other relations, appears
to be that of a sober, moral and industrious man, and he
has pecuniary ability amply to provide for his children.
Nothing is alleged or hinted against the moral character of
the mother; it is conceded that she is a suitable person for
the trust, and that she has done and is doing everything for
the care and comfort of the children that one parent can
do.   The chancellor adjudged rightly in placing their claims
upon an equality; either is suitable for the trust, and the
welfare of the children remains the sole criterion for deter-
mination.

The true interests of these children unquestionably call
for the united care of both their parents, but as in the pos-

leave the state and abandon her, alimony was granted, and the custody
of the three youngest children, who were girls, given to the mother,
and the oldest, a boy, to the father.  The ages of the children are
not stated in the case.

In *Bennett* v. *Bennett, 43 Conn. 313,* the mother of two daughters, aged
five and nine years, after living with her husband at irregular times
for several years, went to live with her parents, because of her hus-
band's inability to obtain employment, or provide for her.  On her
petition, alleging desertion, a divorce was denied, and the custody of
the children given to the father, who was of good moral character and
attached to them, and although he was unsuccessful in business, yet
his mother and sister were cultured persons of the highest character,
morally and socially, and able, pecuniarily, and willing to assume to
support and educate the children.—REP.

ture which they have assumed, and still maintain toward each other, this cannot be had, I am of opinion that the chancellor, in deciding to leave them for the present where they are, is as nearly right, under all the circumstances, as it is possible to be. In view of their tender years, a mother's care seems to be necessary to both; this is conceded by the appellant's answer. It is certainly so as to the daughter, and they are receiving the kindest maternal care at her hands. Their reasonable wants are supplied, clothing and food are furnished, and the advantages of good schools afforded them.

That the children desire to remain with the mother, although not an infallible test of what will best conduce to their true happiness, is, nevertheless, a circumstance entitled to the court's consideration. I also think it is very desirable that these children should be kept together in personal association, until other and more important considerations shall render a separation necessary. It is neither shown in the case, nor averred, that any influence is exerted over these children by the mother, or others about them, to prejudice their minds against their father. The fear that this may be so, introduces one of the most troublesome elements in this case. One of the objects of the law is to foster and encourage mutual affection between parent and child. An important purpose of education is to train children to the cultivation of filial affection and confidence, and, until it otherwise appears, we must rely upon the good sense and justice of the respondent, that she will not, in this respect, abuse the trust reposed in her, or permit those in whose society these children are, by act or word, to alienate their affections from their father.

The decree settles the present status only of these children, and it invites the father to seek such terms of access to them as may be reasonable in the judgment of the chancellor. Of these he may avail himself if he desires to visit them. Were the son of an age and condition of health to enter upon a course of business training, I should have

English v. English.

regarded it as promotive of his interests to be placed under the charge of his father. He is, however, of delicate constitution, and too young, as I think, to have his mind so directed now; yet, the time must soon come when the interests of the son will require that he have the aid and guiding hand of some proper person in fitting him for and directing him in a suitable business pursuit; and this duty no one can so well perform as a father who has experience and possesses, or is worthy of, the affection and confidence of his child. This father, by his own business success, has given the best evidence of his ability and qualification for the discharge of this duty. This office belongs to him as a right as well as a duty. He has done nothing, that I can perceive, to forfeit his right to such control, and when the son arrives at a proper age, if this unfortunate separation continues, it will be difficult, upon any reason that now appears, to offer effectual resistance to his just demand to resume the sole custody of the son. No one can be a safer guide in this respect than a prudent father; no one is likely to feel a stronger interest in the future of his boy than he; and this father would be unnatural in his feelings and affections, to a degree not proved by anything in this case, if he did not fully equal all others in the desire for the success and prosperity in life of this his only son. For the present, however, I think the children should remain with the mother, and I shall vote to affirm.

DIXON, J. (dissenting).

As I am so unfortunate as to differ with my brethren in regard to the proper result of this cause, I take the liberty of stating the grounds of my dissent.

Upon a bill filed by this respondent for divorce *a mensa et thoro*, because of cruelty, this court, in June, 1876 (*12 C. E. Gr. 579*), decreed that she was not entitled to such divorce. The misconduct of her husband, then complained of by her, seemed to the court to be exceptionable, and to

have grown out of a temporary bodily ailment of the wife, aggravated by her nervous and rather delicate constitution; and, "looking at the history of the married life of these parties, the affection this husband has always manifested for his wife, and his repentance for his misconduct," the court concluded that there was no reasonable ground to apprehend any further transgressions.

Upon the making of that decree, it became the legal duty of the respondent to return with her children to the home which she had left, and to replace herself by the side of him to whom she had promised to cleave so long as they both should live. Ever since her departure, up to the present time, that home has been kept ready to receive her, and touching entreaties from her husband have again and again besought her reconciliation. But hitherto she has disregarded this legal and sacred duty, and has, without lawful cause, withheld from this petitioner the society of wife and children, to which he was entitled. This is, I think, misconduct on her part, such misconduct as prevents her from establishing upon the statute, any claim to equality of right with her husband for the possession of her children. To hold the contrary is to put an end to the long-conceded right of the husband to be the head of his family. If a wife may, in the absence of legal justification, remove herself and her children from their father's domicile, and fix their residence in a place where he may not abide, and still stand before the law upon an equal footing with him as to their custody, then is the headship of the husband and father no longer legally recognized. In my judgment that conclusion should not yet be reached, and this controversy should be decided upon the principle that the father is entitled to have his children, unless their welfare requires that they should be otherwise disposed of.

But, waiving any question of superior right, I proceed to consider whether the happiness and welfare of these children are the more likely to be promoted in the custody of the mother or of the father. And by *happiness* I do not

English v. English.

mean the pleasure of remaining with the parent whom they love, as compared with the temporary pain of separation from her, but I mean that more permanent enjoyment of life which attends upon and is almost identical with welfare.

As to the girl, I agree that, for the present, she ought to remain with her mother.

The boy is now over eleven years old, not, perhaps, robust, but of average healthfulness, and, as his aunt says, "seems to be very smart, reads very nicely, ciphers and writes very nicely, better than most children of his age." He has therefore reached or is close upon that stage of life when the care and nurture of a mother are less indispensable than the authority and control of a father. It will soon be proper to determine what occupation shall engage his manhood, and to guide his youth with that end in view.

The petitioner is a mechanic and tradesman; a person of at least ordinary education and intelligence, of sobriety, industry and probity, of an affectionate disposition, and having a respectable place in society. By prudent management, he has accumulated a moderate fortune, which supports a well-established business in Jersey City, and out of which he provided, and is able to provide, for his family a good home with every reasonable comfort. He, therefore, possesses those qualities of mind and heart which are likely, under favoring conditions, to center his affections upon this only son, and those habits of thinking and living which are calculated to make him a safe guardian for his boy. He has, also, the means of educating his son, and of establishing him either in his own business, or in some other useful calling. Under his control, this child will enjoy far better opportunities for comfortable success than are afforded to most youths.

The respondent is, perhaps, possessed of somewhat more culture than her husband, and, but for her disregard of wifely duty, I would have no difficulty in believing that she is endowed with those estimable traits which are so common to her sex. She is without means of her own. Her father,

with whom she has taken up her abode, is a man of good character and standing, but rapidly approaching the allotted limit of life. Besides the respondent, he has another married daughter with children, two married sons with children, and an unmarried son. He seems to have no settled trade or profession. Mrs. English says: ". He was at one time teaming for Droy's oakum factory, carting oakum, and rope, and other things." At present, he is superintendent of chemical works. His pecuniary resources are not shown by the evidence, but enough appears to justify the belief that, among all the objects of his bounty, this grandson will not be likely to receive from him such aid and advancement as his own father can supply.

This statement of the respective positions of the persons concerned, drawn, in considerable measure, from the former opinion of this court, and in the whole warranted by the proofs, strongly inclines me to the judgment that this boy's prospects in life will be best promoted by committing him to the affection and control of his father. Nor am I unmindful of the advantages of a mother's influence, nor would I deprive him entirely of it. For, although the custody of this son should be given to the petitioner, yet, in the order of the court, provision should be made for his being a frequent visitor to his mother's residence, and thus, as far as practicable, her proper influence may be retained.

But it is said that, in a few years hence, the court may conclude to grant what the petitioner now asks. To this delay, however, there are serious objections. The evidence shows that, during the separation of these parents, the love and respect of the children for their father have cooled, and, from circumstances not necessary to be discussed, they have imbibed (to use the respondent's words) "a dread and constant fear of seizure and capture" by him. A continuance of the present relations cannot but intensify these unhappy sentiments, and soon will preclude the possibility of the petitioner's instilling into the mind of his son such filial regard as alone can secure to the son the lasting affec-

English *v.* English.

tion of his father. Then, too, this petitioner, under the advice of most experienced counsel, has suffered the deprivation of his children for years, awaiting the time when, as they judged, an application to the law would be most likely to succeed. At their permission, and with much anxiety, trouble and expense, doubtless, he has now appealed for relief, only to learn that he must still stand alone in the world, expecting the coming of a day, no one can tell when. If, under this rebuff, he shall withdraw his parental desires and shut up his heart to selfishness, who shall say that he is worse than nature has made many men?

> "Even here I will put off my hope, and keep it
> No longer for my flatterer; he is drowned
> Whom thus we stray to find, and the sea mocks
> Our frustrate search on land. Well, let him go!"

Such a hazard I am not willing to incur.

Nor do the precedents in this and other courts warrant further delay. In *State, Baird pros.* v. *Baird, 6 C. E. Gr. 384,* where, as here, the father was seeking from the mother possession of his children, and where, having regard to the best interests of the children, he certainly stood upon no better vantage ground, as compared with his wife's position, than does this petitioner in relation to this respondent, this court, while leaving with the mother two boys of the age of five and eight years, gave to the father the custody of three others, ten, twelve and fourteen years old. A similar disposition of still younger boys was made in *Com.* v. *Briggs, 16 Pick. 203,* and *State* v. *Paine, 4 Humph. 523.* I know of no opposing case.

The statute of our state contemplates that, as a rule, a child of seven years should be with its father. Thus both the legislature and the courts have indicated that ordinarily the welfare of a boy as old as ten years will be best subserved under his father's eye. I can find no fact in the character or circumstances of any of these parties which should make this case an exception to this wise and natural rule. And if it be for the good of society that lands and

English *v.* English.

chattels shall be secured to us under uniform laws that may be known, much more should our children—these dearest possessions, the ornaments of middle age and the props of declining years—not be arbitrarily torn away.

There is another consideration not yet adverted to, one, perhaps, not of controlling moment, but, nevertheless, well worthy to be remembered. When, four years ago, this court reversed the chancellor's decree for the legal separation of these parents, it was hoped that they would be re-united. The father, stripped of every domestic joy, has earnestly and sincerely sought that re-union. It is even now urged against him, by the advisers of the respondent, that this proceeding aims more at the recovery of his wife with her children than of the children alone. The mother, crushing out her wifely love under a sense of wrong endured, consoled for what she has given up by the society of her children and her parents, has silently resisted her husband's desires. That the best interests of these children depend upon the complete rehabilitation of the petitioner's home, is unmistakable. If this boy be with his father, and this girl be with her mother, both dwelling respectably in the same city, and there be, as there ought, frequent visitation on the part of these children to both parents, this court's purpose of reconciliation may yet be accomplished. What the husband alone has not been able to secure, the husband and son together may bring to pass—the restoration of this respondent to a full sense of her duty as a wife and mother.

The decree below, as to the son, should be reversed.

For affirmance—BEASLEY, C. J., DEPUE, KNAPP, MAGIE, REED, SCUDDER, VAN SYCKEL, CLEMENT, DODD, GREEN, LATHROP—11.

For reversal—DIXON—1.